Scott, J.
In the construction of a will, it is well settled as a paramount rule, in this state, that the intention of the' testator, as gathered from the whole will, must control, when such intention is not in conflict with the law or *13 against public policy. It is also an established rule of construction, that words in a will are to be understood according to their ordinary and legal signification, unless it is manifest from the context, or from other provisions in the will, that the testator has used them in a different sense, and unless the sense in’which they were used is clearly apparent.
Reading the will under consideration, in the light of this latter rule, the question is, what is the quantum and character of the estate which the testator intended that his children should take in- the realty specifically devised to them ?
The English rule, that a devise to A. and his heirs, followed'by a devise over in case A. die without issue, will be cut down to a fee tail in A., and the woi’d heirs be construed as meaning issue, is owing to the fact that in that country the words “dying without issue” are construed as meaning an indefinite failure of issue. 2 Jar. on Wills, 301. In this state, however, it is well settled that the words “dying without issue ” import a dying without issue living at the death of the prior devisee. Parrish’s Heirs v. Ferris, 6 Ohio St. 563; Niles v. Gregory, 12 Ohio St. 320. Still, we should have no hesitation in finding, from the language of the-will before us, that the. testator intended a life estate only for the first devisees, if the sole condition of the limitation over to the nephews aud nieces had been the dying of his children without issue ; and without reference to the time when they should so die. But such is not the language of the will. The testator does not attempt to make any disposition of his property, after the- death of his children, except in the event of the death of both of them before becoming of full. age. And yet it is obvious from the general and comprehensive terms of the residuary clauses, that he was anxious to leave no property undisposed of, which it was in his power to control. If he intended to give his children a mere life estate in the premises, then he purposed, in case either of them should live till majority, and both should die without leaving issue, *14 that the fee of- the land should remain wholly undevised. Eor it is very clear that, in such case, the contingent devise over to his nephews and nieces could never take effect. Had a life estate only been intended for his son, why should the remainder over depend on his death during minority ? Hence, a very strong implication arises that the testator intended by the words “ and to their heirs” (found in the habendum clause), to give to his children an estate of inheritance in fee simple in the premises devised, which should become indefeasible upon their attaining an age which would render them legally capable of controlling and disposing of it. His scheme of testamentary disposition contemplated his children as the primary objects of his bounty. Should both of them die during minority, and leaving no issue, then he intended the estate to pass over to certain nephews and nieces in fee simple. This purpose he could effect by an executory devise, which should make the estate given to his children defeasible, upon the happening of the contemplated contingency.
But this defeasible character of the estate given to his children, was in no case to affect or defeat their estate “during their natural lives.” It is clear also that he did not intend to prefer the children of his brother and sister to the lawful issue of his own children; for the limitation over is in case bis own children shall die under age, and ‘without lawful issue. But it is to be presumed that he knew the statutes of descent of this state, and was aware that if his children should die under age, and of course intestate, their issue would1 succeed to the inheritance, unless he should otherwise direct. With the statutory rule of descent he was content, and made no provision to the contrary.
If one only of his children should die during minority, leaving no issue, it is to be presumed he knew that his surviving child would, under the statute of descents and distribution, take, as heir, the property devised or bequeathed to the one so dying.
That this would accord with his wishes, is evident from *15 the fact that the gift over is conditioned upon the death oí both his children during minority.
If, then, by taking the words of the habendum, “ and to their heirs,” in their ordinary and legal signification, as words of limitation, defining the extent of the estate or interest in the lands devised (which it is the proper office of a habendum to do) — if, by assuming that the testator meant just what he has said, we,can give full effect to the whole scheme of disposition, so far as it is clearly shown in any and every part of the will, we have no right to conjecture that the testator may have used the word “ heirs,” in a different sense, as meaning children or issue; and thereupon to change the testator’s scheme for one of our own. There is no direct devise of the laud in question to any one except to Stevenson Reddish, and the ulterior devisees, his English cousins, in the event of his dying within age and without issue. The word “heirs” does not occur in the devising clause proper. But defendants in error claim that this word heirs, means children or issue, because the condition of the limitation over is that Stevenson shall die without issue, which could only have been intended for the benefit of his children ; but, as we have said, this implication is rebutted by the provision that the property shall go over only in the event of Stevenson’s death during minority. If he live to be twenty-one, the testator has said, in effect, that the property devised to him shall never go over, -under the will, issue or no issue. This condition could be intended Only for the benefit of Stevenson himself. We can not, therefore, be even reasonably certain that the testator used the word “ heirs” as descriptive of the children that might be born to Stevenson, and to whom he intended to devise the fee simple. Indeed, he seems to have understood the distinction between heirs generally, and children or issue. He uses both words in the same séntence. 'When he speaks of “lawful issue,” he evidently means children; and when he speaks of “ heirs,” why shall we not presume that he means "heirs'generally, as the word usually and legally imports ? There could be no room for a possible doubt on *16 this question, were it not that the testator has said that his children should have and hold the premises previously devised to them “ during their natural lives .”
These words standing alone, or if followed by the word only, would clearly indicate an intention to restrict the estate previously given in general terms, to a mere life estate. But this expression does not stand alone. His children are “to have and hold during their natural lives, and to their heirs.” Here we find an apparent express enlargement of the estate given, to a fee simple. The reason fbr this form of expression may be learned by looking to the remainder of the sentence, in which there is a contingent devise over. Construing the whole sentence together, we think the meaning of the testator can not be regarded as doubtful.
He intended that each of his children should take an estate in fee simple in the premises devised to them respectively. But he farther intended that this estate should be defeasible, and terminate with “ their natural lives,” in case they should both die before attaining the age of twenty-one years, and without lawful issue. Upon the happening of that contingency no one should take the premises devised, as heir to his children, or either of them, but they should pass to the ulterior devisees under the will.
This construction is in harmony with the general scope of the will. For, after disposing of the real estate specifically described, and which he divides between his two children according to his own judgment, the testator proceeds to give to his children the whole of his remaining property, whether real or personal, to be equally divided between Sarah and Stevenson, when Sarah (the elder) should become of age. Stevenson’s share, upon this division, is to be retained by his guardian until he becomes of age, and then “ the said share to be given immediately up to him, and the functions of the guardian, as also the executor or executors, to cease.”
There can be no doubt that as to all this residuary px’opex’ty, whether real or personal, the childrexx were to be the *17 absolute owners, with full power of control over it, as soon as they would respectively become of age. And yet all this property, as well as the accumulations arising from interest, or the rents of any part of the whole estate, was subjected to the same limitation over, in favor of the same nephews and nieces, and upon the same conditions, as in the case of the lands and lots specifically described and divided by the testator between his children. We see no reason to doubt that he intended their title to the property specifically devised to be equally absolute and indefeasible, if either of them should live to be of full age, or should leave lawful issue.
Such would, very clearly, be the construction of the will under the rule in Shelley’s case. But, by the 47th section of the wills act of 1840, and the corresponding 53d section of our present wills act, it is declared that “ when lands, tenements,orhereditaments are given by will to any person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only in such first taker, and a remainder in fee simple in his heirs.” The rule of construction prescribed by these statutes, was intended to give a controlling effect to the clear intention of the testator, and to forbid the application of the rule in Shelley’s case, when such application would defeat the manifest intention of the testator. Were we to regard this statute as applicable to wills which, like the one before us, took effect before its passage, we should still he of the opinion that the language of the will under consideration is not such as to bring it within the class of cases contemplated by the statute.
We think the judgment of the court below should be reversed, and the petition of the plaintiffs, in the court below, be dismissed.